UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

---

| | |
|---|---|
| SANDRA LEE | CIVIL ACTION NO. 21-3232 |
| VERSUS | JUDGE DONALD E. WALTER |
| CITY OF SHREVEPORT AND JOE MERO IN HIS INDIVIDUAL CAPACITY AND OFFICIAL CAPACITY AS ASSISTANT DIRECTOR OF SPAR | MAGISTRATE JUDGE HORNSBY |

---

## MEMORANDUM RULING

Before the Court is a Rule 12(b)(6) Motion to Dismiss filed by the Defendants, City of Shreveport ("the City") and Joe Mero ("Mero"). See Record Document 10. Plaintiff, Sandra Lee ("Lee"), opposes the motion. See Record Document 12. For the reasons assigned herein, Defendants' motion is hereby **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND INFORMATION

Lee is a sixty-seven year old female former employee of the City of Shreveport. See Record Document 1 at ¶¶ 2, 6. Lee was hired by the City in 2015 to be an "Instructor II" for Shreveport Public Assembly & Recreation ("SPAR"). See id. at ¶¶ 7-8. In 2016, Lee was "progressed" to Recreation Specialist and Center Manager. See id. In 2018, Lee was placed in the position of Recreation Supervisor II. See id. Lee asserts that Mero, the Assistant Director of SPAR, "acknowledged" to her and her direct supervisor, Kenneth Cornelius, that she would soon be promoted to the position of Recreation Superintendent because she had already been performing the essential functions of that position. See id. at ¶ 9.

Lee alleges that in September 2019, the City advertised for a Superintendent position at SPAR, although the posting did not indicate whether the position would be in the Athletics or

Recreation Division of SPAR. See id. at ¶ 11. Lee states that "suspiciously" the position was publicly advertised while she was off work pursuant to the Family Medical Leave Act ("FMLA"). See id. at ¶ 12. Despite the timing of the advertisement, Lee applied for the position. See id. at ¶ 13. Lee alleges that thereafter, she was contacted by Human Resources and was informed that the position would be in the Athletics Division of SPAR. See id. Lee asserts that although the SPAR 2020 budget provided sufficient "room for growth" in both divisions (Athletics and Recreation), the advertisement was "abruptly designated for Athletics Division at the very moment [she] applied for the position." See id. at ¶ 14. Lee alleges that this action was taken "clearly with the intent to exclude her from the opportunity she was promised." See id.

Lee maintains that "[i]t became very apparent … that 'the fix was in' and Mero had no intent of offering her the promotion." See id. at ¶ 15. Based on this assessment, her circumstances related to FMLA leave, the alleged anxiety and distress of being over worked and underpaid, and the news that she had been excluded from a promotion she was promised, Lee declined to be interviewed for the advertised position. See id. In or around October 2019, an external male applicant in his thirties was hired for the position after interviewing with Mero. See id. at ¶ 16. Lee maintains that this is consistent with Mero's pattern of hiring males for supervisory positions for SPAR. See id. at ¶ 18.

Lee states that in February 2020, she complained to her supervisor and Human Resources "about discrimination against herself regarding her promotion, wages, and assigned duties" and requested a job audit. See id. at ¶ 20. Lee contends that as a result of the job audit, it was determined that she had been performing the job duties of Superintendent for two years and would be paid six months' worth of back wages. See id. at ¶ 21. Lee asserts that as a direct result of her complaints and request for a job audit, Mero stripped away her administrative tasks and duties such that she no longer worked in the Administrative Building, thus lowering her

2

status and placing her back at the recreational facility. See id. at ¶ 22. Lee claims that this downgrade in her job functions meant that she had no duties to complete when Covid-19 restrictions were placed on the department. See id. at ¶ 24. Thus, Lee contends that but for the actions of Mero, she would not have been furloughed. See id. Lee states that she "was forced to submit her resignation on October 23, 2020, because she was denied a promotion because of her age and sex… and subsequent retaliation" by Mero. See id. at ¶ 6.

Lee asserts that Mero "embarked on an orchestrated campaign of retaliatory harassment designed to make [her] so miserable at work … that she would be compelled to resign, and/or to secure pretextual reasons to fire her" if she did not resign. See id. at ¶ 25. Lee claims that Mero acted with willful and reckless indifference to her right to engage in protected conduct and that this conduct resulted in her suffering severe mental and emotional distress requiring medical treatment. See id. at ¶¶ 26-27.

Lee alleges claims of discrimination, stating that she was forced to submit her resignation because she was denied a promotion based on her age and sex in violation of Title VII, 42 U.S.C. § 2000 et seq., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and Louisiana law, Louisiana Revised Statute 23:301 et seq., Louisiana Revised Statute 23:312 et seq., and Louisiana Revised Statute 51:2231 et seq. See id. at ¶ 6. Lee also alleges a claim of retaliation by her supervisor, Mero, in his individual capacity[1] after she filed a complaint with Human Resources pursuant to 42 U.S.C. § 1983 and Louisiana Revised Statute 51:2256. See id. at ¶¶ 28, 32. Lee also maintains that the City is vicariously liable for Mero's conduct pursuant to 42 U.S.C. § 1981 and Louisiana Revised Statute 51:2256. See id. at ¶¶ 35-38. Defendants move

---

[1] The Court notes that the caption of Plaintiff's Complaint also lists Joe Mero in his official capacity. However, the body of the Complaint only alleges liability based on Mero's individual capacity. See Record Document 1 at ¶ 28.

to dismiss all of Lee's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). See Record Document 10.

## LAW AND ANALYSIS

### I. Federal Rule of Civil Procedure 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the requirements for pleadings that state a claim for relief, requiring that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The standard for the adequacy of complaints under Rule 8(a)(2) changed from the old, more plaintiff-friendly "no set of facts" standard to a "plausibility" standard found in Bell Atlantic v. Twombly and its progeny. See Bell Atlantic v. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007). Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555-556. If a pleading only contains "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citation omitted). Courts do not have to accept legal conclusions as facts. See id.

"Motions to dismiss under Rule 12(b)(6) are rarely granted and generally disfavored." Rodriguez v. Rutter, 310 F. App'x 623, 626 (5th Cir. 2009) (citing Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2009)). However, courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive such a motion. See Iqbal, 556 U.S. at 678-679. If Plaintiff has met this burden, a well-pleaded complaint may proceed even if it appears that recovery is unlikely or remote. See Twombly, 550 U.S. at 556.

### II. Discrimination Claim Under Federal Law

Lee has raised discrimination claims pursuant to Title VII and the ADEA. To properly establish a prima facie case of discrimination based on disparate treatment under Title VII or the ADEA a plaintiff must demonstrate: (1) she is a member of a protected group; (2) she was qualified for the position at issue; (3) she suffered an adverse employment action by her employer; and (4) she was treated less favorably than similarly situated employees outside of the protected group. See Welsh v. Fort Bend Indep. Sch. Dist., 941 F.3d 818, 823 (5th Cir. 2019). Defendants maintain that Lee has failed to identify both an adverse employment action or a similarly situated employee to support such a claim. See Record Document 10-1 at 9.

The allegations in the complaint suggest that Lee's claims of discrimination are based upon the decision by the City and Mero to hire a younger, white male for the Superintendent position. As noted above, Lee states that although she applied for the position, she ultimately declined an interview for the position because it was apparent "the fix was in" by Mero. See Record Document 1 at ¶ 15. These allegations are insufficient to state a claim for discrimination. If Lee had interviewed for the position her claim for disparate treatment on this basis would be viable. However, because Lee chose not to interview for the position, her complaint fails to allege that she was treated differently than someone outside of her protected class. Accordingly, the Court finds that Lee has failed to set forth a viable claim for discrimination based on disparate treatment pursuant to Title VII or the ADEA.

### III.  Retaliation Claim Under Federal Law

Lee's complaint also contains allegations of retaliation pursuant to Title VII and the ADEA.[2] To properly assert a claim for retaliation pursuant to Title VII or the ADEA, a plaintiff

---

[2] The Court notes that the heading used in the complaint refers to "discrimination" under Title VII and the ADEA rather than "retaliation." See Record Document 1 at 2. However, the body of the complaint contains allegations of retaliation, which the Court will review.

5

must allege: (1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a casual link exists between the protected activity and the adverse employment decision. See Sherrod v. Am. Airlines, Inc., 132 F.3d 1112, 1122 (5th Cir. 1988). An employee engages in protected activity if she (1) opposes a practice made unlawful by statute, or (2) makes a charge, testifies, assists, or participates in any manner with a Title VII investigation, proceeding, or hearing. See Grimes v. Tex. Dept. of Mental Health, 102 F.3d 137, 140 (5th Cir. 1996).

Defendants argue that Plaintiff has not properly alleged that she engaged in protected activity, noting that Plaintiff's complaint only states that she complained of "discrimination" without offering any particulars as to whether the discrimination alleged was based on sex, race, age, disability, or perhaps even a classification that is not protected by law. See Record Document 10-1 at 10. The complaint simply states that Plaintiff complained of discrimination to Human Resources without elaboration. See Record Document 1 at ¶ 20. However, a few paragraphs beforehand, the Plaintiff notes that a younger male candidate was hired for the Superintendent position. See id. at ¶ 16. When the complaint is read as a whole, these two paragraphs are sufficient to allege that Plaintiff engaged in protected activity.

Defendants also argue that Plaintiff failed to properly allege that she experienced an adverse employment action. See Record Document 10-1 at 10. An adverse employment action is determined by examining whether the challenged conduct is "materially adverse" such that the action is "harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of discrimination." Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs., 810 F.3d 940, 945 (5th Cir. 2015). Plaintiff argues that the allegations in her complaint meet the standard of "materially adverse," noting that she claims that she was relegated to a non-essential position, which eventually led to a furlough and the loss of

substantial pay.  See Record Document 12 at 8.  The Court finds that Plaintiff has provided sufficient factual allegations of a materially adverse action.  She alleged that after her complaint to Human Resources, Mero "stripped away" her "administrative tasks and duties resulting in her no longer working in the Administrative Building, thereby lowering her status and placing her back in a recreational facility."  Record Document 1 at ¶ 22.  Both a lateral transfer and a diminution of status among coworkers may be sufficient in certain circumstances.  See Stewart v. Miss. Transp. Com'n., 586 F.3d 321, 332 (5th Cir. 2009).

Finally, Defendants argue that Plaintiff failed to properly allege the causal link between her protected activity and the adverse employment action.  See Record Document 10-1 at 10. The Court disagrees.  Plaintiff's complaint includes allegations that "Mero embarked upon an orchestrated campaign of retaliatory harassment designed to make Lee so miserable at work so that she would be compelled to resign, and/or to secure pretextual reasons to fire her should she not resign."  Record Document 1 at ¶ 25.  This statement is sufficient to infer the causation element at this point in the litigation.  As such, the Court finds that that Plaintiff has stated a plausible claim for retaliation pursuant to Title VII and the ADEA.

### IV.    42 U.S.C. § 1983 Claim Against Mero

Lee's complaint advances a claim pursuant to 42 U.S.C. § 1983 directly against Mero for his alleged retaliatory actions.  See Record Document 1 at 5.  Defendants contend that Plaintiff has failed to sufficiently plead a claim pursuant to Section 1983.  See Record Document 10-1 at 12.  In general, a plaintiff may pursue both a Title VII claim and Section 1983 claim when an employer's conduct violates both Title VII and a separate constitutional or statutory right, even if the factual allegations for both claims are the same.  See Southard v. Tex. Bd. of Crim. Justice, 114 F.3d 539, 549 (5th Cir. 1997).

Lee has asserted a Section 1983 claim against Mero in his individual capacity only based on his alleged "willful and/or reckless indifference" to her rights. See Record Document 1 at ¶ 28. However, Plaintiff has failed to identify a separate constitutional right. While Plaintiff's complaint does contain a reference to 42 U.S.C. § 1981, that statute requires a showing of an intent to discriminate on the basis of race. Plaintiff's complaint contains no allegations of discrimination on the basis of race. Accordingly, Plaintiff's 42 U.S.C. § 1983 claim against Mero must be dismissed because a separate constitutional right has not been identified.[3] [4]

## V.  42 U.S.C. § 1981 Claims Against the City

As noted above, Lee's complaint contains a claim against the City pursuant to 42 U.S.C. § 1981 for the retaliatory conduct of Mero. See Record Document 1 at 8. Section 1981 provides: "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contract . . . as is enjoyed by white citizens." 42 U.S.C. § 1981. This provision is sufficiently broad to encompass claims of retaliation. See CBOCS West, Inc. v. Humphries, 553 U.S. 442, 446, 128 S.Ct. 1951, 1955 (2008). To properly assert a claim pursuant to Section 1981 based on retaliation a plaintiff must show: (1) she engaged in activities protected by Section 1981; (2) an adverse employment action followed; and (3) a causal connection exists between the protected activities and the adverse action. See White Glove Staffing, Inc. v. Methodist Hosp. of Dall., 947 F.3d 301, 308 (5th Cir. 2020). As to the

---

[3] If Plaintiff had asserted a claim against Mero in his official capacity that claim would also be dismissed for the same reasons.

[4] It is unclear to the Court whether Plaintiff intended to assert claims against Mero under Title VII, ADEA, or Louisiana law. To the extent such claims have been made they must also be dismissed. Mero is not an "employer" as that term is defined under federal or state law. See Indest v. Freeman Decorating, Inc., 164 F.3d 258, 262 (5th Cir. 1999) (Title VII suit against a supervisor is actually a suit against the employing corporation); Stults v. Conoco, Inc., 76 F.3d 651, 655 (5th Cir. 1996) (ADEA provides no relief against supervisory employees in their individual capacities).

third element, the Supreme Court has stated that "a plaintiff must initially plead and ultimately prove that, but for race, [the plaintiff] would not have suffered the loss of a legally protected right." Comcast Corp. v. Nat'l. Ass'n. of African Am.-Owned Media, --- U.S. ---, 140 S.Ct. 1009, 1019 (2020). Plaintiff's complaint contains no allegations concerning race. As such, Plaintiff's Section 1981 claim must be dismissed.

### VI. Claims Pursuant to Louisiana law

Defendants also move to dismiss all state law claims asserted by the Plaintiff. Louisiana courts have recognized that Louisiana's antidiscrimination laws are substantially similar to federal antidiscrimination laws such that courts may appropriately consider interpretations of federal antidiscrimination laws when construing Louisiana law. See Johnson v. Hosp. Corp. of Am., 767 F. Supp. 2d 678, 712-713 (W.D. La. Feb. 11, 2011) (citations omitted); Baker v. FedEx Ground Package Sys., Inc., 278 F. App'x 322, 327 (5th Cir. 2008). As such, this Court will apply Title VII and ADEA discrimination and retaliation principles when considering Plaintiff's state law claims.

Plaintiff's complaint contains claims of discrimination and retaliation due to age and sex under Louisiana law pursuant to Louisiana Revised Statute 23:301 et seq., Louisiana Revised Statute 23:312, Louisiana Revised Statute 51:2231, and Louisiana Revised Statute 51:2256. Of the statutes listed in Plaintiff's complaint, only Louisiana Revised Statute 23:312 and Louisiana Revised Statute 51:2256 contain the necessary language under which one may assert a claim.[5] Because the Court has found that Plaintiff failed to state a claim for discrimination under Title VII or the ADEA, Plaintiff's related claim pursuant to Louisiana Revised Statute 23:312 must also be dismissed. Conversely, because the Court has found that Plaintiff has sufficiently stated

---

[5] Louisiana Revised Statute 23:301 sets forth the title of the chapter as the "Louisiana Employment Discrimination Law" while Louisiana Revised Statute 51:2331 states the purpose behind Louisiana's prohibitions against age discrimination.

a claim for retaliation under federal law against the City, the corresponding state law claim pursuant to Louisiana Revised Statute 51:2256 may proceed.

## CONCLUSION

Based on the foregoing reasons, Defendant's Rule 12(b)(6) Motion to Dismiss (Record Document 10) is **GRANTED IN PART** and **DENIED IN PART**.

Defendants' motion is **GRANTED** with respect to (1) Plaintiff's claims of discrimination pursuant to Title VII and the ADEA, (2) Plaintiff's claim against the City pursuant to 42 U.S.C. § 1981, (3) Plaintiff's 42 U.S.C. § 1983 claim against Joe Mero, and (4) Plaintiff's claims pursuant to Louisiana Revised Statute 23:312. These claims are hereby **DISMISSED**.

Defendants' motion is **DENIED** as to Plaintiff's claims of retaliation against the City pursuant to Title VII, the ADEA, and Louisiana Revised Statute 51:2256.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 15th day of June, 2022.

_____
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE